**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

PAUL NAPOLI and MARIE KAISER NAPOLI,　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　Plaintiffs,　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:　　**COMPLAINT**

　　　　- against -　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:　　Civ. Case No. 2021-CV-9279

CHARTIS PROPERTY CASUALTY COMPANY,　　　　:

now known as AIG PROPERTY CASUALTY　　　　:

COMPANY and NATIONAL SURETY　　　　　　　　:

CORPORATION　　　　　　　　　　　　　　　　　:　　**JURY TRIAL DEMANDED**

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　Defendants.　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:

-----------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, Paul Napoli and Marie Kaiser Napoli (hereinafter "Plaintiffs" or "the Napolis"), by their attorneys, Offit Kurman, P.A., in support of their Complaint against Defendants, Chartis Property Casualty Company now known as AIG Property Casualty Company ("Chartis") and National Surety Corporation ("NSC") (collectively, "Defendants"), respectfully allege the following:

## NATURE OF THE ACTION

1.　　In this action, Plaintiffs seek a declaration, pursuant to 28 U.S.C. §2201 et. seq. and Rule 57 of the Federal Rules of Civil Procedure, that Defendants are obligated to defend and indemnify Plaintiffs, the Napolis, in an underlying action filed by Denise A. Rubin in the New York County Supreme Court ("Rubin Action") under Homeowners Policies that Defendants sold to the Napolis, which expressly provide coverage for the allegations of defamation asserted against

the Napolis in the Rubin Action.  Plaintiffs further seek monetary damages for Defendants' breach of contract based on their failure to defend and indemnify Plaintiffs in the Rubin Action.

## PARTIES

2.      At all times hereinafter mentioned, Plaintiff Paul Napoli is an adult individual who is a resident of Puerto Rico with an address of 200 Dorado Breach Drive, Unit 3812, Dorado, Puerto Rico 00646.

3.      At all times hereinafter mentioned, Plaintiff Marie Kaiser Napoli is an adult individual who is a resident of Puerto Rico with an address of 200 Dorado Breach Drive, Unit 3812, Dorado, Puerto Rico 00646.

4.      Defendant Chartis was the company that issued the relevant insurance policies referenced herein and attached hereto. Upon information and belief, Defendant Chartis has been purchased by AIG Property Casualty Company, and presently falls under the umbrella of and is presently known as AIG Property Casualty Company, which is incorporated in the State of Delaware having its principal place of business at 175 Water Street, 18st Floor, New York, NY 10038.

5.      Upon information and belief, at all times hereinafter mentioned, Chartis was authorized by the Department of Financial Services of the State of New York to issue policies of insurance, including the policy issued herein.

6.      Upon information and belief, at all times hereinafter mentioned, Defendant NSC was incorporated in the State of Illinois having its principal place of business at 225 W. Washington St., Suite 1800, Chicago, IL 60606.

7.      Upon information and belief, at all times hereinafter mentioned, NSC was and remains duly authorized by the Department of Financial Services of the State of New York to issue polices of insurance, including the policy issued herein.

## JURISDICTION AND VENUE

8.      The subject matter jurisdiction of this Court is based upon 28 U.S.C. §1332, in that there is complete diversity among the parties, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391, as Defendants did or do business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

### The Subject Insurance Policies

10.     In or around April 2012, Chartis sold Plaintiffs Homeowners Policy No. PCG0001332563, with policy period of April 30, 2012 through April 30, 2013.  This policy was renewed for the period of April 30, 2013 through April 30, 2014 (collectively, "Chartis Homeowners Policies").   True and correct copies of the 2012-2013 and 2013-2014 Chartis Homeowners Policies are attached hereto as Exhibits A and B, respectively.

11.     The Chartis Homeowners Policies provide liability coverage in the amount of $500,000 for each occurrence.  *See* Ex. A and B.

12.     In or around April 2012, Chartis sold to Plaintiffs two personal Excess Liability Policies under Policy No. PCG0003018048, with a policy period of April 30, 2012 through April 30, 2013.  This excess policy was also renewed for the policy period April 30, 2013 through April 30, 2014 (collectively, "Chartis Excess Policies") (with the Chartis Homeowners Policies,

collectively "Chartis Policies"). The Chartis Excess Policies followed form to the Chartis Homeowners Policies. True and correct copies of the 2012-2013 and 2013-2014 Chartis Excess Policies are attached hereto as Exhibits C and D, respectively.

13.     The Chartis Excess Policies provide excess liability coverage in the amount of $20 million for each occurrence. *See* Ex. C and D.

14.     The Chartis Homeowners Policies provide that Chartis "will pay damages an insured person is legally obligated to pay for personal injury or property damage caused by an occurrence, covered by this policy anywhere in the world." *See* Ex. A and B.

15.     In addition, Chartis promised to "pay the costs to defend an insured person against any suit seeking covered damages for personal injury or property damage, even if the suit is false, fraudulent or groundless." *Id*.

16.     "Personal injury" is defined in the Chartis Policies to include the following injuries:

    a.  Bodily injury;

    b.  Wrongful detention, False imprisonment or false arrest;

    c.  Shock, emotional distress, mental injury;

    d.  Invasion of privacy;

    e.  Defamation, libel or slander;

    f.  Malicious prosecution;

    g.  Wrongful entry or eviction; or

    h.  Assault and battery when committed with the intent of protecting persons.

*Id.*

17.     In or around May 2014, NSC sold Plaintiffs Homeowners Policy No. NZA3870516, with a policy period of May 15, 2014, through May 15, 2015 ("NSC Homeowners Policy"). NSC

issued a Prestige Excess Liability Policy for the same policy period with the same policy number that follows form to the NSC Homeowners Policy ("NSC Prestige Excess Policy") (collectively, "NSC Policies").  True and correct copies of the NSC Homeowners Policy and the NSC Prestige Excess Policy are attached hereto as Exhibits E and F, respectively.

18.    The NSC Policies provide in relevant part that NSC will "pay on behalf of the insured up to the limit of insurance shown on the Declarations for damages for which the insured is legally liable." *See* Ex. E and F.

19.    The NSC Policies provides that NSC "will settle or defend, as we consider appropriate any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur."  *Id*.

20.    The NSC Policies define "personal injury" as "physical or mental harm arising out of the following acts:

      a.    False arrest detention, or imprisonment;

      b.    Malicious prosecution;

      c.    Wrongful entry or eviction;

      d.    Defamation, libel, slander; or

      e.    Invasion of privacy."

*Id.*

**The Underlying Action**

21.    On or about April 24, 2015, non-party Denise A. Rubin filed an action in the Supreme Court of the State of New York, County of New York, against multiple defendants, including Plaintiff Paul Napoli, asserting cause of action for, and allegations attempting to support claims for, breach of contract, employment discrimination, violations of New York City's Human

Rights Law, and *quantum meruit* ("the "Rubin Action").  A true and correct copy of the Complaint filed by Denise Rubin against, *inter alia*, Plaintiff Paul Napoli is attached hereto as Exhibit G.

22.     On January 30, 2020, Ms. Rubin filed a Verified Amended Complaint in the Rubin Action, adding numerous factual allegations.  A true and correct copy of the Amended Complaint filed by Denise Rubin against, *inter alia*, Plaintiff Paul Napoli is attached hereto as Exhibit H.

23.     Although certain of Ms. Rubin's claims against Mr. Napoli appear to arise out of Mr. Napoli's business activities with respect to his law firms (*e.g.,* claims that Ms. Rubin is owed wages for work at Mr. Napoli's law firms), the allegations in the Verified Amended Complaint are far more expansive and vastly broader than those business-related claims, and contain numerous allegations that do not relate to Mr. Napoli's business activities with his law firms, but rather relate to allegations that the Napolis defamed Ms. Rubin and abused the process of the courts. *See* Ex. H, at ¶¶5, 8, 9, 28, 33, 34 and 35.

24.     For example, Ms. Rubin repeatedly avers in the Verified Amended Complaint that the Napolis made false and defamatory statements that Ms. Rubin violated her ethical duties as a lawyer by revealing confidences that Ms. Rubin learned in connection with her representation of Ms. Napoli and the Napoli family. *Id*.

25.     Specifically, Ms. Rubin alleges that, in the action that Mr. Napoli filed against her, Mr. Napoli asserted that Ms. Rubin served as his wife's person attorney and as "personal counsel to the Napoli family", impermissibly disclosed Mr. Napoli's confidences in violation of Ms. Rubin's ethical obligations as his counsel, and impermissibly disclosed his privileged documents. *Id*. at ¶¶39-40.

26.     Ms. Rubin alleges that Mr. Napoli's statements were false (*Id*. at ¶40) and defamatory (*Id*. at ¶32).

27.     Ms. Rubin similarly alleges that Ms. Napoli made statements that "Ms. Rubin had represented her in unspecified matters, had been the 'Napoli Family Counsel,' had become privy to Ms. Napoli's confidences through those representations ... and disclosed her privileged confidences" to an unidentified attorney. *Id*. at ¶35.

28.     Ms. Rubin also alleges that Ms. Napoli's statements that Ms. Rubin disclosed private confidences of Ms. Napoli are false. *Id*.

29.     Ms. Rubin alleges that Ms. Napoli "filed a wholly frivolous action against Plaintiff," in which Ms. Rubin alleges that Ms. Napoli claimed that "Ms. Rubin was her attorney and 'personal counsel to the Napoli family.'" *Id.* at ¶36. Ms. Rubin alleges that this statement was untrue. *Id*.

30.     Ms. Rubin alleges that Ms. Napoli stated that Ms. Rubin violated her confidences in a document filed in the underlying action in March of 2016. *Id*. at ¶37. Ms. Rubin alleges that this statement is untrue. *Id*.

31.     In addition, Ms. Rubin asserts that Ms. Napoli "abus[ed] the process of the court" by "caus[ing] messengers to appear repeatedly at Ms. Rubin's place of business and at Ms. Rubin's home ... causing [her] professional and personal humiliation, embarrassment and threatening her livelihood." *Id*. at ¶¶8, 38.

32.     Accordingly, the Verified Amended Complaint in the Rubin Action sets forth factual allegations of "defamation" and "abuse of process" – which are denied – but which nevertheless trigger Chartis' and NSC's duty to defend under the Chartis and NSC Policies. *See* Ex. H.

33.     Pursuant to the terms and conditions contained in the Chartis and NSC Policies, Defendants had and have a duty to defend and indemnify Plaintiffs in connection with the allegations of defamation and malicious prosecution asserted in the Rubin Action.

34.     Chartis and NSC have denied their duty to defend Plaintiffs for the claims asserted in the Rubin action, purportedly in reliance upon an exclusion in the policies for personal injury arising out of business activities or personal injury arising out of business pursuits.

35.     However, as they are relying upon an exclusion to deny their defense obligation, Chartis and/or NSC bear the burden of establishing that there is no potential for coverage for the allegations in the Amended Complaint filed by Ms. Rubin.

36.     Under the allegations of the Amended Complaint, all of which are denied, there is the potential for Plaintiffs, the Napolis, to be found liable for allegedly making statements that Ms. Rubin claims are defamatory regarding whether Ms. Rubin breached her professional duties as counsel to the Napolis in the course of her legal representation of the Napolis as the Napoli family counsel. Under the broad duty to defend under Pennsylvania law, this potential for coverage triggers both the Chartis and NSC Policies.

37.     Plaintiffs caused timely notice of the Rubin Action to be provided to Defendants Chartis and NSC.

38.     Defendants have refused to defend Plaintiffs in the Rubin Action.

39.     There is a justiciable controversy by and between Plaintiffs, the Napolis, and Defendants, Chartis and NSC, concerning the coverage provided under the insurance policies at issue.

40.     The controversy between Plaintiffs and Defendants is justiciable (and not advisory), the controversy is ripe for the Court's adjudication of the dispute, and the Court's

8

adjudication of the dispute will terminate the controversy over whether the Defendants must provide a defense and indemnification to Plaintiffs under the insurance policies at issue for the Amended Complaint filed by Ms. Rubin.

## COUNT I

**(Declaratory Judgment -- Duty to Defend -- against Defendant Chartis)**

41.     Plaintiffs repeat and reiterate each and every allegation contained in Paragraphs 1 through 40 of this Complaint as though fully set forth at length herein.

42.     Plaintiffs timely notified Chartis of the Rubin Action and requested a defense and indemnification in connection with that action.

43.     Plaintiffs have performed all of their obligations pursuant to the Chartis Policies and satisfied all conditions precedent to coverage under those policies.

44.     The claims alleged in the Rubin Action fall within the insuring provisions of the Chartis Policies.

45.     Chartis disclaimed coverage in connection with the Rubin Action, and specifically Chartis disclaimed any duty to defend Plaintiffs in that action.

46.     Plaintiffs seek a declaratory judgment compelling Chartis to meet its obligations under the Chartis Policies and provide Plaintiffs with a defense in connection with the Rubin Action.

## COUNT II

**(Declaratory Judgment -- Indemnification -- against Defendant Chartis)**

47.     Plaintiffs repeat and reiterate each and every allegation contained in Paragraphs 1 through 46 of this Complaint as though fully set forth at length herein.

48.    Plaintiffs timely notified Chartis of the Rubin Action and requested a defense and indemnification in connection with that action.

49.    Plaintiffs have performed all of their obligations pursuant to the Chartis Policies and satisfied all conditions precedent to coverage under those policies.

50.    The claims alleged in the Rubin Action fall within the insuring provisions of the Chartis Policies.

51.    Chartis disclaimed coverage in connection with the Rubin Action.

52.    Plaintiffs seek a declaratory judgment compelling Chartis to meet its obligations under the Chartis Policies and provide Plaintiffs with indemnification in connection with the Rubin Action.

### **COUNT III**

### **(Breach of Contract against Defendant Chartis)**

53.    Plaintiffs repeat and reiterate each and every allegation contained in Paragraphs 1 through 52 of this Complaint as though fully set forth at length herein.

54.    Chartis issued the Chartis Policies to Plaintiffs.

55.    Plaintiffs are Insureds under the Chartis Policies.

56.    Plaintiffs have performed all of their obligations pursuant to the Chartis Policies and satisfied all conditions precedent to coverage under those policies.

57.    The claims alleged in the Rubin Action fall within the insuring provisions of the Chartis Policies.

58.    Chartis breached the Chartis Policies by disclaiming coverage to Plaintiffs in connection with the Rubin Action.

59.    As a result of that breach, Plaintiffs have suffered substantial monetary damages.

60.     As a result of Chartis' breach of the Chartis Policies, Plaintiffs have had to defend the Rubin Action at their own expense, and accordingly, have suffered damages in an amount to be determined at trial.

## COUNT IV

**(Declaratory Judgment -- Duty to Defend -- against Defendant NSC)**

61.     Plaintiffs repeat and reiterate each and every allegation contained in Paragraphs l through 60 of this Complaint as though fully set forth at length herein.

62.     Plaintiffs timely notified NSC of the Rubin Action and requested defense and indemnification in connection with that action.

63.     Plaintiffs have performed all of their obligations pursuant to the NSC Policies and satisfied all conditions precedent to coverage under those policies.

64.     The claims alleged in the Rubin Action fall within the insuring provisions of the NSC Policies.

65.     NSC disclaimed coverage in connection with the Rubin Action.

66.     NSC disclaimed any duty to defend Plaintiffs in the Rubin Action.

67.     Plaintiffs seek a declaratory judgment compelling NSC to meet its obligations under the NSC Policies and provide Plaintiffs with a defense in connection with the Rubin Action.

## COUNT V

**(Declaratory Judgment -- Indemnification -- against Defendant NSC)**

68.     Plaintiffs repeat and reiterate each and every allegation contained in Paragraphs l through 67 of this Complaint as though fully set forth at length herein.

69.     Plaintiffs timely notified NSC of the Rubin Action and requested defense and indemnification in connection with that action.

70.     Plaintiffs have performed all of their obligations pursuant to the NSC Policies and satisfied all conditions precedent to coverage under those policies.

71.     The claims alleged in the Rubin Action fall within the insuring provisions of the NSC Policies.

72.     NSC disclaimed coverage in connection with the Rubin Action.

73.     Plaintiffs seek a declaratory judgment compelling NSC to meet its obligations under the NSC Policies and provide Plaintiffs with indemnification in connection with the Rubin Action.

## COUNT VI

### (Breach of Contract against Defendant NSC)

74.     Plaintiffs repeat and reiterate each and every allegation contained in Paragraphs l through 73 of this Complaint as though fully set forth at length herein.

75.     NSC issued the NSC Policies to Plaintiffs.

76.     Plaintiffs are Insureds under the NSC Policies.

77.     Plaintiffs have performed all of their obligations pursuant to the NSC Policies and satisfied all conditions precedent to coverage under those policies.

78.     The claims alleged in the Rubin Action fall within the insuring provisions of the NSC Policies.

79.     NSC breached the NSC Policies by disclaiming coverage to Plaintiffs in connection with the Rubin Action.

80.     As a result of that breach, Plaintiffs have suffered substantial monetary damages.

81.     As a result of NSC's breach of the NSC Policies, Plaintiffs have had to defend the Rubin Action at their own expense, and accordingly, have suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

a)      On their First Cause of Action against Defendant Chartis for declaratory relief, requiring Chartis to provide Plaintiffs with defense coverage in connection with the Rubin Action;

b)      On their Second Cause of Action against Defendant Chartis for declaratory relief, requiring Chartis to provide Plaintiffs with indemnification coverage in connection with the Rubin Action;

c)      On their Third Cause of Action against Defendant Chartis for breach of contract, monetary damages in an amount to be determined at trial;

e)      On their Fifth Cause of Action against Defendant NSC for declaratory relief, requiring NSC to provide Plaintiffs with indemnification coverage in connection with the Rubin Action;

f)      On their Sixth Cause of Action against Defendant NSC for breach of contract, monetary damages in an amount to be determined at trial; and

g)      together with the costs and disbursements of this action and interest and for such other and further relief as to which this Court deems just and proper.

Dated: November 9, 2021
      New York, NY                  **OFFIT KURMAN, P.A**.

                                 By:    Daniel I. Goldberg,
                                      590 Madison Avenue, 6th Floor
                                      New York, NY 10022
                                      Tel: (212) 545-1900

Fax: (212) 545-1656
Email: digoldberg@offitkurman.com

Megan K. Finnerty (*pro hac vice* pending)
OFFIT KURMAN, P.A.
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (267) 338-1300
mfinnerty@offitkurman.com

*Attorneys for Plaintiffs,*
*Paul Napoli and Marie Kaiser Napoli*

4891-1042-3554, v. 1