# EXHIBIT "G"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x
DENISE A. RUBIN,

                                   Plaintiff designates New York
                                   County as the place of trial.

                Plaintiff,

                                   Index No.

        -against-

NAPOLI BERN RIPKA SHKOLNIK, LLP,
WORBY GRONER EDELMAN & NAPOLI BERN, LLP,
NAPOLI BERN & ASSOCIATES LLP and
PAUL J. NAPOLI,

                Defendant.
-------------------------------------------------------------x

        To the above named Defendant:

        Bangkok Bank Public Limited Company
        29 Broadway
        New York, NY 10006

        You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff=s attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

        The basis of in this action is based on the principal places of business of the Defendants in New York County and upon the residence of the Plaintiff in New York County.

        Dated:  April 24, 2015
                  New York, New York

                                         Giskan Solotaroff Anderson & Stewart LLP

                            By:    /s_____
                                  Jason L. Solotaroff, Esq.
                                  Attorneys for Plaintiffs
                                  11 Broadway, Suite 2150
                                  New York, NY 10004

Jason L. Solotaroff, Esq.
GISKAN SOLOTAROFF ANDERSON & STEWART, LLP
11 Broadway, Suite 2150
New York, New York 10004
 Attorneys for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x

DENISE A. RUBIN,

    Plaintiff,            Index No.

    v.               **VERIFIED COMPLAINT**

NAPOLI BERN RIPKA SHKOLNIK, LLP,
WORBY GRONER EDELMAN & NAPOLI BERN, LLP,
NAPOLI BERN & ASSOCIATES LLP and
PAUL J. NAPOLI,

    Defendants.

----------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. This is a employment discrimination and breach of contract action by Denise A. Rubin, an attorney formerly employed as the General Counsel and appellate counsel of Napoli Bern Ripka Shkolnik, LLP ("the Napoli Firm") and Worby Groner Edelman & Napoli Bern, LLP ("WGENB") and for the benefit of numerous other law firm entities ("the NB entities"). These are related law firm entities well known for representing individual personal injury plaintiffs in personal injury, mass tort, products and professional liability and environmental litigations, most recently and notably, acting as Plaintiffs' Co-Liaison Counsel in September 11th related litigation.

2. Ms. Rubin was hired by one of the Napoli Bern Law firm entities known as Napoli Kaiser Bern, LLP in January 2003 as Appellate Counsel. She was subsequently employed, at times concurrently, by other Napoli Bern entities, the Napoli Firm and WGENB. In approximately June 2008, Ms. Rubin was appointed General Counsel of the Napoli Firm and WGENB. She also continued to serve both firms as Appellate Counsel.

3. In these roles, Ms. Rubin was responsible for both firms' appellate practice, which included multiple appeals to the Second Circuit on September 11th related matters, as well as serving as a principal attorney on many of the firms' complex trial court matters, including asbestos, mass tort, environmental and pharmaceutical products liability claims. Ms. Rubin also defended the Firms and their individual attorneys against numerous disciplinary matters and coordinated the Firms' professional liability defenses, overseeing the work of outside counsel assigned by insurance carriers and assisting in their work by reviewing and redrafting much of those attorneys' written work. Ms. Rubin performed these tasks with skill and dedication and was a key component to the success of the firms.

4. Yet Ms. Rubin was consistently paid far less than male attorneys with less experience and responsibility employed by the Firm. Despite Defendant Paul Napoli's assurances that he was working toward making her a Partner in the firms, she watched as male attorneys with less experience and having far less responsibility within the firms were routinely hired as Partners. She received a lower base salary than male attorneys hired as Partners, and even lower than male attorneys hired as associates, in some cases, despite Napoli's assurances to the contrary. In addition, despite Defendant Paul Napoli promising on multiple occasions that Ms. Rubin would receive commensurate bonuses to those received by male attorneys, Ms. Rubin received much smaller bonuses to the very limited extent she received them at all.

5. On September 4, 2014, Napoli told Ms. Rubin that her employment had been terminated. There was no cause for Ms. Rubin's termination and male attorneys with legitmate performance issues had not been terminated by Defendants and remain employed by the Napoli Firm to this date. Another Senior Partner at the Napoli Firm, Marc Bern, informed Ms. Rubin that she was not being terminated and requested that she continue working, albeit from outside the firm's physical offices. Although Mr. Bern initially continued to pay her salary and reimburse her out-of-pocket expense for insurance benefits for two pay periods, Ms. Rubin worked for the firm for an additional period without being informed she would no longer be compensated. She has not been paid for the work and court appearances done during that time.

6. As a result of Defendants' discriminatory conduct and breach of their agreements with Ms. Rubin, she has incurred damages to be determined at trial but no less than $1,000,000.

**VENUE**

7. Venue in this action is based on the principal places of business of the Defendants in New York County and upon the residence of the Plaintiff in New York County.

**THE PARTIES**

8. Plaintiff, Denise A. Rubin, is a resident of the City, State and County of New York.

9. Defendant Napoli Bern Ripka Shkolnik, LLP is a limited liability partnership organized under the laws of New York with offices in New York County.

10. Defendant Worby Groner Edelman & Napoli Bern, LLP is a limited liability partnership organized under the laws of New York with offices in New York County. It is a joint venture created by the Napoli Bern & Associates, LLP and the Worby Groner firm, created for the express purpose of handling handle September 11th related claims for toxic exposure

personal injuries.  According to Ms. Rubin's 2014 W-2 form, this firm employed her for part of 2014.

11. Defendant Napoli Bern & Associates LLP is a limited liability partnership organized under the laws of New York with offices in Suffolk County. According to Ms. Rubin's 2014 W-2 form, this firm also employed her for part of 2014.

12.  Defendant Paul J. Napoli is an attorney duly licensed to practice in the States of New York and Illinois and a Senior Partner in the above-named law firms.  He is a resident of Nassau County, New York and New York County, New York.

## THE FACTS

13.  Ms. Rubin is a 1990 graduate of the Fordham University School of Law.  After graduation, she was employed as an Associate Attorney or "Of Counsel" at several law firms and by the New York State Unified Court System as Principal Court Attorney to the Hon. Karla Moscowitz.

14.  In 2003, Ms. Rubin was hired as appellate counsel by Napoli Kaiser & Bern, LLP, another of the Napoli Bern-owned law firm entities.   As appellate counsel, Ms. Rubin was responsible for the firm's extensive appellate practice as well as for its complex trial briefing and motions practice at the trial court level.  Among Ms. Rubin's accomplishments were obtaining the Second Circuit's reversal of numerous grants of summary judgment in September 11th related matters, obtaining reversals of summary judgment in many personal injury and professional liability matters and playing instrumental roles in many of the Firm's cases that resulted in sizable settlements, including the September 11th matters, diet drug ("fen-phen") and environmental mass tort litigation.  She was also instrumental in overhauling and markedly

improving the quality of the law firms' written product, as a result of reviewing and editing most substantive written work produced by the firm's attorneys, including that of the Senior Partners.

15. In 2008, Ms. Rubin was appointed as the Firms' General Counsel in response to the request of the Napoli Firm's insurance carrier that a Senior Attorney be appointed to that position. She retained all of her existing responsibilities and also took on the representation of the Firm and its attorneys in disciplinary and professional liability matters, oversight of ethical matters and oversight of outside counsel representing the firm, among other things. Ms. Rubin was responsible for obtaining favorable results in every one of the numerous disciplinary matters brought against the Firms and their attorneys during her tenure.

16. Despite taking on numerous responsibilities and exercising them with a high degree of skill and dedication, Ms. Rubin was paid less than several male attorneys who had less experience, less responsibility and whose performance was inferior to hers. Specifically, several male attorneys were paid higher base salaries than Ms. Rubin. In addition, male attorneys received bonuses of several hundred thousand dollars from the proceeds of the September 11th settlements while Ms. Rubin, whose work was integral to those settlements, received no bonus whatsoever, despite repeated promises by Defendant Napoli that several categories of bonuses – many of which were non-discretionary aspects of her compensation package -- would be paid. All of those non-discretionary bonuses were fully earned and vested prior to her termination by Napoli on September 4, 2014.

17. Despite Defendant Napoli's assurances that he wanted to promote her to partner, Ms. Rubin was not promoted to partner during her employment with Defendants. Meanwhile, several male attorneys who were less experienced, less skilled and exercised less responsibility

than Ms. Rubin were promoted to or hired as partner at the Napoli Firm or other Napoli Bern entities.

18. In addition, although Defendant Napoli agreed with Ms. Rubin that she would receive a non-discretionary bonus equal to 5% of all of the Firm's net attorney's fees in matters assigned to Ms. Rubin or on which Ms. Rubin was "materially involved" as part of her compensation package, Ms. Rubin did not receive these payments on many of those matters including but not limited to: Common Benefit Fees paid to the firm for work done as Plaintiffs' Co-Liaison Counsel on the *In re: World Trade Center Disaster Site Litigation* matters (21MC100 [SDNY]); settlement funds paid on matters revived after being dismissed on summary judgment under (*Markut v Verizon N.Y. Inc. (In re World Trade Ctr. Lower Manhattan Disaster Site Litig.)*, 758 F.3d 202 [2d Cir 2014]); and the overall settlement of the matters litigated under 21MC100 – the so-called "Captive" or "SPA" Settlement and related subsequent settlements.

19. On September 4, 2014, Napoli informed Ms. Rubin that her employment was terminated. There was no cause for Ms. Rubin's termination. Indeed, Ms. Rubin's performance had been exemplary throughout her employment. Meanwhile, male attorneys with documented performance issues were not terminated at that time and remain in Defendants' employ.

20. Even though Napoli had told Ms. Rubin she was terminated, another Senior Partner at the Firm, Marc Bern, told her she had not been terminated and directed her to continue working from home while he "worked things out" in a dispute then ongoing with Napoli.

21. Ms. Rubin continued to receive her salary and reimbursement of her out-of-pocket COBRA payments for medical insurance benefits until October 14, 2014. Thereafter, however, Ms. Rubin continued to work on the Firms' matters until at least early December 2014,

without being paid salary or any other compensation for that time despite her continued demands for the outstanding monies owed.

22. As a result of the foregoing, Ms. Rubin has suffered significant loss of income her and future earning potential, out of pocket damages, and has experienced emotional pain and suffering.

## FIRST CLAIM FOR RELIEF
### (Violation of New York City Human Rights Law)

23. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

24. Defendants discriminated against Plaintiff in the terms, conditions and privileges of employment on account of her sex in violation of New York City Administrative Code §8-107.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

25. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

26. In or about September 2013, when negotiating a salary increase, Plaintiff and Defendants agreed that in exchange for her continued employment she would be paid five percent of all NB's net attorney's fees recovered in matters assigned to Ms. Rubin or on which Ms. Rubin was "materially involved."

27. Plaintiff fully performed her obligations under this agreement.

28. Defendants breached this agreement by failing to pay Plaintiff five percent of all net attorney's fees recovered in matters assigned to Ms. Rubin or on which Ms. Rubin was

"materially involved."

29. Plaintiff suffered damages as a result of Defendants' breach of their agreement with Plaintiff.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

30. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

31. Plaintiff was employed pursuant to an agreement under which she received a specified base salary and benefits for the time that she was in Defendants' employ.

32. During the period October 14, 2014 until early November 2014, at the express behest of a Senior Partner of the Defendant Law Firm(s), Plaintiff performed her obligations under the agreement by rendering services to Defendants.

33. Defendants breached the agreement by not paying base salary or benefits during that period.

34. Plaintiff suffered damages as a result of Defendants' breach of their agreement with Plaintiff.

### FOURTH CLAIM FOR RELIEF
### (Quantum Meruit, in the alternative)

35. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

36. From October 14, 2014 until early December 2014, Plaintiff rendered services to Defendants in good faith. Defendants accepted the services and were benefitted by them.

37. Plaintiff and Defendants both understood and expected that Plaintiff would be compensated for her services.

38. It would be inequitable for Defendants to retain the benefit provided by Plaintiff without payment of compensation.

**WHEREFORE**, Plaintiff demands judgment:

A. Awarding Plaintiff compensatory damages including but not limited to damages for emotional distress;

B. Awarding Plaintiff punitive damages;

C. Awarding reasonable attorneys' fees, costs and expenses;

D. Granting such other legal and equitable relief as the Court may deem just and equitable.

Dated:   New York, New York
         April 24, 2015

GISKAN SOLOTAROFF ANDERSON
& STEWART LLP

/s
_____
By:   Jason L. Solotaroff
11 Broadway, Suite 2150
New York, New York 10004
212-847-8315

ATTORNEYS FOR PLAINTIFF