# EXHIBIT "H"

Jason L. Solotaroff, Esq.
GISKAN SOLOTAROFF & ANDERSON, LLP
90 Broad Street, 10th Floor
New York, New York 10004
Attorneys for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X

DENISE A. RUBIN,

                              Plaintiff,


    -against-

NAPOLI BERN RIPKA SHKOLNIK, LLP, WORBY GRONER EDELMAN & NAPOLI
BERN, LLP, NAPOLI    BERN & ASSOCIATES, LLP and PAUL J. NAPOLI,

                              Defendants.
----------------------------------------------------------------------X
PAUL J. NAPOLI,
                              Counterclaim Plaintiff,
    -against-

DENISE A. RUBIN,

                              Counterclaim Defendant.
----------------------------------------------------------------------X

NAPOLI BERN RIPKA SHKOLNIK, LLP,
WORBY GRONER EDELMAN &
NAPOLI BERN, LLP, NAPOLI BERN &
ASSOCIATES, LLP

                              Counterclaim Plaintiff,        Index No. 154060/2015


    -against-

DENISE A. RUBIN,

                              Counterclaim Defendant.
----------------------------------------------------------------------X


## VERIFIED AMENDED COMPLAINT

Case 1:21-cv-09279-AJN   Document 1-8   Filed 11/09/21   Page 3 of 22

## PRELIMINARY STATEMENT

1. This is an employment discrimination, breach of contract and retaliation action by Denise A. Rubin, an attorney formerly employed as the General Counsel and Appellate Counsel of Napoli Bern Ripka Shkolnik, LLP ("the Napoli Firm") and Worby Groner Edelman & Napoli Bern, LLP ("WGENB") and for the benefit of numerous other law firm entities ("the Napoli Bern entities" or "Firms"). These are related law firm entities well known for representing individual personal injury plaintiffs in personal injury, mass tort, products and professional liability and environmental litigations, most recently and notably, acting as Plaintiffs' Co-Liaison Counsel in September 11th related litigation.

2. Ms. Rubin was hired by one of the Napoli Bern entities known as Napoli Kaiser & Bern, LLP in January 2003 as Appellate Counsel. She was subsequently employed, at times concurrently, by other Napoli Bern entities, including but not limited to the Napoli Firm and WGENB. In approximately June 2008, Ms. Rubin was appointed General Counsel of the Napoli Firm, WGENB, and the other Napoli Bern entities. She also continued to serve the Napoli Bern entities as Appellate Counsel and functioned in a quasi-managerial capacity, assisting in the supervision of attorneys and staff by overseeing their written work.

3. In these roles, Ms. Rubin was responsible for the Firms' appellate practice, which included multiple appeals to the Second Circuit on September 11th related matters, as well as serving as a principal briefing attorney on many of the firms' complex trial court matters, including asbestos, mass tort, environmental and pharmaceutical products liability claims and single-incident personal injury and professional liability matters. Ms. Rubin also successfully defended the Napoli Bern entities and their individual attorneys against numerous disciplinary matters and coordinated the Napoli Bern entities' professional liability and other defenses to

1

litigations against the law firm entities, the shareholders, contract partners and their employees, overseeing the work of outside counsel assigned by insurance carriers and assisting in their work by reviewing and redrafting much of those attorneys' written work. Ms. Rubin performed these tasks with skill and dedication and was acknowledged by the firms' partners and shareholders to be a key component to the law firms' success.

4. Yet Defendant Paul J. Napoli ("Defendant Napoli"), who was primarily responsible for making employment, promotion and compensation decisions at the Napoli Firm, decided to pay Ms. Rubin far less in base salary and bonuses than less experienced and less qualified male attorneys and terminated her employment when male attorneys whose performance was far below that of Ms. Rubin were retained. Ms. Rubin was consistently paid far less than male attorneys with less experience and responsibility employed by the Firms. Despite Defendant Napoli's repeated, consistent, and ultimately false representations that he was working toward making her a Partner in the firms, she watched as male attorneys with less experience and having far less responsibility within the firms were routinely hired as or promoted to be Partners. She received a lower base salary than male attorneys hired as Partners, and even lower than male attorneys hired as associates, in some cases, despite Napoli's assurances to the contrary. In addition, despite Defendant Napoli promising on multiple occasions that Ms. Rubin would receive commensurate bonuses to those received by male attorneys, Napoli decided that Ms. Rubin would receive much smaller bonuses to the very limited extent she received them at all. Having defined a portion of her compensation package in the form of a 5% share of the net attorneys' fees realized by the law firms on matters assigned to Ms. Rubin, including, but not limited to, portions of the settlements realized on the World Trade Center Disaster Site Litigations and other mass tort litigations, Napoli consistently failed to pay

2

Ms. Rubin that aspect of her compensation, always promising it was "coming."

5.   After several weeks of increasingly erratic conduct, threats and harassment of Ms. Rubin via telephone calls, text messages and video conferencing, on September 4, 2014, Napoli sent Ms. Rubin an email stating "I think it is best that you look for another job."  There was no cause for Ms. Rubin's termination and male attorneys with legitimate performance issues had not been terminated by Napoli and remain employed by the Napoli Firm (or its successor firms, including Napoli Shkolnik, PLLC) to this date. Senior Partner Marc Bern informed Ms. Rubin that she was not being terminated and requested that she continue working, albeit from outside the firm's physical offices, on matters for which she was responsible, including several federal appellate matters where she was "Attorney of Record."  Bern continued to pay her to work on client matters off site for approximately one month; and at Bern's and other partners' behest, and with their knowledge, encouragement and acquiescence, Ms. Rubin worked for the firms for an additional one to two month long period after that, for which time and work she has never been paid.  Conscious of her professional responsibilities to her former clients and despite the abysmal treatment she received at Napoli's hands and from others acting at his behest, as recently as mid -2016, Ms. Rubin continued to accept email and telephone inquiries from firm attorneys or paralegals who seek her assistance in finding documents, information or advice on procedural matters.

6.   Ms. Rubin has not been paid for the work and court appearances done during the period between October 10, 2014 and December 2014. When she sought compensation from the Court-Ordered Receiver, Hon. Ira Warshawsky in November 2014, Defendant Napoli falsely told the Receiver that Ms. Rubin had not worked on the matters for which she sought payment. This was untrue; Ms. Rubin's work included at least one Second Circuit brief that was filed on

3

the public docket, resulting in a victory and a published decision, in which Rubin was named as Attorney of Record for the Napoli Bern client.

7. The Napoli Bern entities failed to maintain professional liability insurance to cover employed attorneys as required by a material clause in Ms. Rubin's employment agreement. As a result, the attorney's professional liability policy covering Ms. Rubin for professional liability claims, made based on work done for the Napoli Bern entities or their clients during her employment by the Napoli Bern entities, lapsed on or about March 1, 2015, and no "tail" was purchased by the Napoli Bern entities for later-made claims, leaving her without coverage in the event of a professional liability claim that could be timely made as late as September 4, 2017.

8. Following the filing of Ms. Rubin's original complaint in this action, Defendant Napoli took or compelled others working at his behest to take a number of retaliatory actions against her, including the denigrating her personally and professionally to professional colleagues and in the legal press; public-docket filing of meritless, lewd and professionally damaging counterclaims; filing on the public docket a scurrilous and wholly untrue motion to disqualify her as counsel alleging she was mentally unstable; harassing former clients; referring attorneys and the law firm where she rents her office space; misusing discovery in this litigation to humiliate Ms. Rubin before former employers; filing a meritless stand-alone litigation and compelling or colluding with another Napoli Firm partner's filing of a meritless disciplinary complaint with the Disciplinary Committee of the First Department; filing, with his wife and occasional counsel Marie Napoli, defamatory motions in other litigations depicting Ms. Rubin as unethical and disloyal; filing with Marie Napoli, near-identical lawsuits in Nassau and Suffolk Counties falsely alleging that Rubin represented them and their family in multiple unspecified

4

matters and thereafter breached their confidences; abusing the processes of the Court and disrupting her home and place of business with multiple repeated and unnecessary services of process intended and designed to cause her professional and personal humiliation.

9.   As a result of Defendants' discriminatory conduct and breach of their written and oral agreements with Ms. Rubin as well as Defendant Napoli's ongoing campaign of retaliation against her, she has incurred damages to be determined at trial but no less than $1,000,000.

## VENUE

10. Venue in this action is based on the principal places of business of the Defendants in New York County and upon the residence of the Plaintiff in New York County.

## THE PARTIES

11. Plaintiff, Denise A. Rubin, is a resident of the City, State and County of New York.

12. Defendant Napoli Bern Ripka Shkolnik, LLP is a limited liability partnership organized under the laws of New York.

13. Defendant Worby Groner Edelman & Napoli Bern, LLP is a limited liability partnership organized under the laws of New York.  It is a joint venture created by the Napoli Bern & Associates, LLP and Worby Groner & Edelman, LLP, created for the express purpose of handling September 11th related claims for toxic exposure personal injuries suffered by first responders working at or near the World Trade Center Disaster Site in lower Manhattan following the terrorist attacks of September 11, 2001.  According to Ms. Rubin's 2013 and 2014 W-2 forms, this firm employed her for at least 2013 and a part of 2014.

5

Case 1:21-cv-09279-AJN   Document 1-8   Filed 11/09/21   Page 8 of 22

14. Defendant Napoli Bern & Associates LLP is a limited liability partnership organized under the laws of New York with offices in Suffolk County. According to Ms. Rubin's 2014 W-2 form, this firm also employed her for at least a part of 2014.

15. Defendant Paul J. Napoli is an attorney duly licensed to practice in the States of New York and Illinois and a Senior Partner and 50% shareholder in the above-named law firms. Napoli is a resident of Nassau County, New York and New York County, New York and in his recently filed lawsuit against Ms. Rubin in the Supreme Court, Suffolk County, he also alleges he is a resident of that county.

## THE FACTS

16. Ms. Rubin is a 1990 graduate of the Fordham University School of Law. After graduation, she was employed as an Associate Attorney or "Of Counsel" at several law firms and by the New York State Unified Court System as Principal Court Attorney to the Hon. Karla Moskowitz.

17. Upon information and belief, Defendant Napoli founded the first of the Napoli Kaiser Firm entities in or about 1997 and Napoli Kaiser & Bern P.C. in or about 2002. He has consistently exercised primary operational and administrative control over each of the law firms bearing his name and at which Ms. Rubin worked throughout her tenure with the several entities. Based on her close working relationship with Defendant Napoli, and to a lesser extent, with Bern, Ms. Rubin observed that Defendant Napoli consistently had sole control of administrative matters within the firms, including in particular, personnel decisions such as hiring, termination, partnership, compensation and bonuses. Bern was often traveling or working from out of state and on the infrequent occasions when Bern hired or terminated employees without Napoli's

6

acquiescence, Napoli blatantly and publicly countermanded Bern's staffing decisions to his partner's chagrin.

18. In 2003, Ms. Rubin was hired as appellate counsel by Napoli Kaiser & Bern, LLP, another of the Napoli Bern-owned law firm entities. As appellate counsel, Ms. Rubin was responsible for the firm's extensive appellate practice as well as for its complex trial briefing and motions practice at the trial court level. Among Ms. Rubin's accomplishments were obtaining the Second Circuit's reversal of numerous grants of summary judgment in September 11th related matters, obtaining reversals of summary judgment in many personal injury and professional liability matters and playing instrumental roles in many of the Firm's cases that resulted in sizable settlements, including the September 11th matters, diet drug ("fen-phen") and environmental mass tort litigations. She was also instrumental in overhauling and markedly improving the quality of the law firms' written product, as a result of reviewing and editing most substantive written work produced by the firm's attorneys, including that of the Senior Partners.

19. In mid-2008, Ms. Rubin was appointed as the Firms' General Counsel in response to the request of the Napoli Firm's insurance carrier that a Senior Attorney be appointed to that position. She retained all of her then-existing responsibilities and also took on the representation of the Firm and its attorneys in disciplinary and professional liability matters, oversight of ethical matters, oversight of outside counsel representing the firm, among other things. Ms. Rubin was responsible for obtaining favorable results in every one of the numerous disciplinary matters brought against the Napoli Bern entities and their attorneys during her tenure.

20. Despite taking on numerous responsibilities and exercising them with a high degree of skill and dedication, Defendant Napoli decided that Ms. Rubin would be paid less than

7

several male attorneys who had less experience, less responsibility and whose performance was inferior to hers. Specifically, several male attorneys were paid higher base salaries than Ms. Rubin. In addition, the firms paid male attorneys bonuses of several hundred thousand dollars from the proceeds of the September 11th settlements while Ms. Rubin, whose work was integral to those settlements as Napoli publicly acknowledged on the record in open court, received no bonus whatsoever, despite repeated promises by Defendant Napoli that several categories of bonuses – many of which were non-discretionary aspects of her compensation package -- would be paid. All of those non-discretionary bonuses were fully earned and vested prior to her termination by Napoli on September 4, 2014.

21. Despite Defendant Napoli's assurances that he wanted to promote her to partner, Napoli did not promote Ms. Rubin to partner during her employment with Defendants. Meanwhile, Napoli hired several male attorneys who were far less experienced, less skilled and exercised less responsibility than Ms. Rubin to partner at the Napoli Firm or other Napoli Bern entities.

22. In addition, although Defendant Napoli, and the other 50% shareholder, Bern, agreed with Ms. Rubin that she would receive a non-discretionary bonus equal to 5% of all of the Firms' net attorney's fees in matters assigned to Ms. Rubin or on which Ms. Rubin was "materially involved" as a part of her compensation package, Ms. Rubin did not receive these payments on many of those matters including but not limited to: Common Benefit Fees paid to the firm for work done as Plaintiffs' Co-Liaison Counsel on the *In re: World Trade Center Disaster Site Litigation* matters (21MC100 [SDNY]); settlement funds paid on matters revived after being dismissed on summary judgment under *Markut v Verizon N.Y. Inc. (In re World Trade Ctr. Lower Manhattan Disaster Site Litig.)*, 758 F.3d 202 (2d Cir 2014); and the overall

8

Case 1:21-cv-09279-AJN   Document 1-8   Filed 11/09/21   Page 11 of 22

settlement of the matters litigated under 21MC100 – the so-called "Captive" or "Settlement Process Agreement" ("SPA")  Settlement and related subsequent settlements.

23.   On September 4, 2014, Defendant Napoli informed Ms. Rubin that her employment was terminated, in violation of her employment agreement in that there was no good cause for her termination and she was not provided notice and severance as provided by the agreement.  There was no cause for Ms. Rubin's termination.  Indeed, Ms. Rubin's performance had been exemplary throughout her employment.  Meanwhile, male attorneys with documented performance issues were not terminated at that time and remain in Defendants' employ and subsequently, in the employ of the respective Senior Partners' successor law firm entities.

24.   Even though Defendant Napoli had told Ms. Rubin she was terminated, Bern told her she had not been terminated and directed her to continue working from home while he "worked things out" in a dispute then ongoing with Defendant Napoli.

25.   Ms. Rubin continued to receive her salary and reimbursement of her out-of-pocket COBRA payments for medical insurance benefits from Bern until October 14, 2014.  Thereafter, however, as she was not told that her situation had changed, Ms. Rubin continued to work on the Firms' matters until at least early December 2014, without being paid salary or any other compensation for that time despite her continued demands for the outstanding monies owed.

26.   Ms. Rubin originally filed this action on April 24, 2015.  Defendant Napoli moved to dismiss the complaint against him.  On September 2, 2015, the Court granted Napoli's motion on the ground that Ms. Rubin had not sufficiently alleged Napoli's personal involvement in the original complaint.

9

27.  On October 13, 2015, Plaintiff filed a new action against Napoli.  Napoli's

motion to dismiss that complaint was denied on February 25, 2016, and the Court consolidated

the Napoli complaint with the original action.

28. On March 30, 2016, Napoli filed a counterclaim against Ms. Rubin.  The

counterclaim was frivolous, rambling and nonsensical.   Napoli alleged, without any factual

support, that Ms. Rubin had conspired with Bern to steal the Napoli Bern firms from Napoli,

among other salacious, lewd and wholly irrelevant allegations designed to embarrass and defame

Ms. Rubin both personally and professionally and to impair her ability to earn a living as an

attorney.  Significantly, despite two years of litigations against his former partner Bern and other

employees of the firms, Napoli had not made any such claims against Ms. Rubin until after she

filed the discrimination claims against Napoli.   Moreover, in the counterclaim Napoli went out

of his way to disparage Ms. Rubin by including extraneous and false allegations, including but

not limited to allegations that she was tardy, belligerent, insubordinate, reckless and incompetent

in the performance of her duties as an attorney and claiming, dishonestly, that she had a history

of threatening him and others with physical violence; he similarly went out of his way to include

claims that his former partner, Bern, had publicly humiliated Rubin by ridiculing her appearance.

29.  On May 10, 2016, Hunter Shkolnik, a partner at one of the Napoli Bern entities,

filed a baseless disciplinary complaint against Ms. Rubin with the First Department's

Departmental Disciplinary Committee. The complaint was based on Ms. Rubin's attachment of

documents to her affirmation in opposition to the motion to dismiss. Ms. Rubin had been given

these documents by Bern after her termination.

30. On May 18, 2016, Defendants Napoli Bern Ripka Shkolnik, LLP, Worby Groner

Edelman & Napoli Bern, LLP, and Napoli Bern & Associates, LLP ("Law Firm Defendants"),

10

Case 1:21-cv-09279-AJN   Document 1-8   Filed 11/09/21   Page 13 of 22

by order to show cause, sought an order compelling Ms. Rubin to return the documents she had been given by Mr. Bern.   After the Court indicated that it would not grant the relief requested, the parties stipulated that Ms. Rubin would retain the documents but they would be designated confidential pursuant to the confidentiality order entered by the Court.

31. On June 15, 2016, the Court granted Ms. Rubin's motion to dismiss the "First Amended" Napoli Counterclaim on the procedural ground that the CPLR does not permit the filing of a counterclaim not included as part of an answer. Acknowledging the other grounds asserted in the motion for dismissal, the Court noted that such substantive grounds for dismissal could be renewed by Ms. Rubin if the counterclaims were raised again on appropriate procedural grounds.

32. On June 20, 2016, Defendant Napoli commenced a stand-alone litigation[1] by filing a new Summons and Complaint in this Court against Ms. Rubin; the Complaint repeated the allegations of the dismissed counterclaim including the same frivolous, false, scurrilous and defamatory allegations.

33. On July 1, 2016, Napoli moved to amend his answer to include the allegations of the original counterclaim, including the same frivolous, false, defamatory allegations.

34. On September 29, 2016, the Court rendered a decision granting in part and denying in part Napoli's motion.  The Court denied Napoli's motion insofar as it sought to add claims for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation and defamation per se.  The Court held that the infliction of emotional distress claims were "palpably insufficient and patently devoid of merit" and the defamation claims were time

---

[1] *Paul J. Napoli v. Denise A. Rubin*, Supreme Court, New York County, Index No.: 155162/2016.

11

barred.  It permitted one claim to be added – for tortious interference of contract.

35. On February 2, 2017, Napoli's wife, Marie Napoli, in a litigation against Vanessa Dennis,[2] pending in the Supreme Court, Nassau County (Index No. 606076/2016) filed a motion to disqualify Dennis' counsel, in which she falsely alleged that Ms. Rubin had represented her in unspecified matters, had been the "Napoli Family Counsel," had become privy to Ms. Napoli's confidences through those representations and that Ms. Rubin had subsequently worked with Dennis' attorney, and disclosed her privileged confidences to that attorney.  None of these allegations are remotely true as Ms. Rubin never represented Mrs. Napoli, was never the "Napoli Family Counsel," and never worked with or for Dennis' attorney, his current or past law firm.

36. On February 27, 2017, Napoli's wife, Marie Napoli, filed a wholly frivolous action against Plaintiff in the Supreme Court of New York, Nassau County (*Marie Napoli v. Denise A. Rubin*, Index No.: 601679/2017).  In that action, Ms. Napoli makes multiple demonstrably untrue claims.  Among these, Ms. Napoli alleges that Ms. Rubin was her attorney and "personal counsel to the Napoli family," that Plaintiff represented Ms. Napoli in "this very action" (a virtual impossibility, referring to the February 27, 2017 litigation) and that Plaintiff appeared in correspondence to Vanessa Dennis' prior attorney as Ms. Napoli's counsel.  She further alleges that Plaintiff now is serving as an attorney for Vanessa Dennis, who Ms. Napoli is suing in multiple courts across two states.  None of these  allegations is remotely true as Plaintiff never represented Ms. Napoli, was never "personal counsel to the Napoli family," never became

---

[2] On August 12, 2015, this Court granted Dennis' motion for a TRO against Ms. Napoli to preclude her from then-ongoing harassment and defamation against Dennis by communications in various media to Dennis' past and present employers, colleagues and their family members. That TRO was reaffirmed by the Supreme Court Nassau County (Index No.: 600454-2016) in its Order of September 29, 2016 and unanimously affirmed on appeal to the Appellate Division, First Department on March 7, 2017. *Dennis v. Napoli*, 2017 NY APP DIV LEXIS 1638, 2017 Slip. Op. 01661  (1st Dep't 2017).

12

privy to Ms. Napoli's confidences in any matter and has not represented Ms. Dennis or worked with any of Dennis' attorneys.

37. Marie Napoli further alleged that Plaintiff revealed her confidences and published her confidences in a document filed in this action on April 25, 2016.  The only document filed that date by Plaintiff was her Affidavit in *this* action, supporting her motion to strike the First Amended Counterclaim filed by Marie Napoli as her husband's "counterclaim attorney" (that motion was subsequently granted by this Court's Order of June 15, 2016). The complaint also alleges that Plaintiff's present action filed against the Napoli Bern entities is frivolous and that Plaintiff's stipulation entered at this Court's direction to resolve Defendant Napoli's motion to seal the exhibits supporting the motion to dismiss the First Amended Counterclaim constituted Ms. Rubin's admission that she impermissibly disclosed his privileged documents.  The stipulation constituted no such admission.

38. Since commencing that litigation, Marie Napoli has caused messengers to appear repeatedly at Ms. Rubin's place of business and at Ms. Rubin's home, serving serial copies of the Summons and Complaint on her office receptionist and residential building staff.  At least one such Summons and Complaint served at Ms. Rubin's office had no envelope or other cover, causing Plaintiff professional and personal humiliation, embarrassment and threatening her livelihood.

39. On March 6, 2016, Defendant Napoli filed a Summons and Complaint commencing an action against Plaintiff in Supreme Court, Suffolk County (*Paul J. Napoli v. Denise A. Rubin*, Supreme Court, Suffolk County, Index No. 604127/2017).  The Complaint is virtually identical to that filed by his wife one week earlier in the Supreme Court, Nassau County, except that in addition to the false allegations that Plaintiff served as Marie Napoli's

13

personal attorney and "personal counsel to the Napoli family," the Complaint also alleges that Plaintiff served as Defendant Napoli's personal counsel in numerous matters.

40. As with Marie Napoli complaint, supra, Defendant Napoli Complaint falsely alleges that the Affidavit filed on April 25, 2016 in support of Ms. Rubin's successful motion to dismiss the "First Amended Counterclaim" impermissibly disclosed Defendant Napoli's confidences in violation of Ms. Rubin's ethical obligations as his counsel; the complaint also alleges that the present action filed against the Law Firm Defendants is frivolous and that Plaintiff's stipulation entered at this Court's direction to resolve Napoli's motion to seal the exhibits supporting the motion to dismiss the First Amended Counterclaim constituted Ms. Rubin's admission that she impermissibly disclosed his privileged documents. The stipulation constituted no such admission.

41. In addition to the retaliatory filing of multiple frivolous actions against Ms. Rubin, Defendant Napoli has retaliated against Ms. Rubin by pressuring attorneys who have previously referred matters to Ms. Rubin to stop doing so, among other threats. He has harassed those referring attorneys, the law firm that rents Ms. Rubin her office space, as well as her former clients, by serving third party subpoenas on them designed to harass the recipients and to humiliate and denigrate Ms. Rubin.

42. Defendant Napoli has also retaliated against Ms. Rubin by interfering with her relationship with her insurance carrier. For Napoli's counterclaim, based on the frivolous allegation of professional misconduct, Ms. Rubin requested that Napoli Bern entities' insurance carrier defend the claims, which the carrier agreed to do. On March 1, 2017, Defendant Napoli emailed the insurance carrier's coverage counsel and advised the carrier to disadvantage Ms. Rubin by demanding that she prepay the deductible:

14

You should look to Denise to pay that deductible. From what I know about her financial situation, you should demand the full amount in escrow at the outset or have a high risk nonpayment.

43. As a result of the foregoing, Ms. Rubin has suffered significant loss of income, diminution to her current and future earning potential, out of pocket damages, professional embarrassment, and has experienced emotional pain and suffering.

## FIRST CLAIM FOR RELIEF
### (Discrimination in Violation of New York City Human Rights Law)

44. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

45. Defendants discriminated against Plaintiff in the terms, conditions and privileges of employment on account of her sex in violation of New York City Administrative Code §8-107.

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of New York City Human Rights Law Against Defendant Napoli)

46. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

47. Defendant Napoli retaliated against Plaintiff in the terms, conditions and privileges of employment on account of her opposition to sex discrimination in violation of New York City Administrative Code §8-107.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract Against Napoli Bern Entities)

48. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

49. In or about September 2013, when negotiating a salary increase, Plaintiff and

15

Case 1:21-cv-09279-AJN   Document 1-8   Filed 11/09/21   Page 18 of 22

Defendants agreed that in exchange for her continued employment she would be paid five percent of all NB's net attorney's fees recovered in matters assigned to Ms. Rubin or on which Ms. Rubin was "materially involved."

50. Plaintiff fully performed her obligations under this agreement.

51. Defendants breached this agreement by failing to pay Plaintiff five percent of all net attorney's fees recovered in matters assigned to Ms. Rubin or on which Ms. Rubin was "materially involved."

52. Plaintiff suffered damages as a result of Defendants' breach of their agreement with Plaintiff.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract Against Napoli Bern Entities)

53. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

54. Plaintiff was employed pursuant to an agreement under which she received a specified base salary (and subsequent increases in that salary) and benefits for the time that she was in Defendants' employ.

55. From October 14, 2014 until early December 2014, at the express behest of a Senior Partner of the Napoli Bern entities, Plaintiff performed her obligations under the agreement by rendering services to Defendants and their clients.

56. Defendants breached the agreement by not paying Ms. Rubin her base salary or benefits during that period.

57. Plaintiff suffered damages as a result of Defendants' breach of their agreement with Plaintiff.

16

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract Against Napoli Bern Entities)

58. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

59. Plaintiff was employed pursuant to an agreement under which she received a specified base salary (and subsequent increases in that salary) and benefits for the time that she was in Defendants' employ.

60. One of the benefits provided under Plaintiff's employment agreement was the provision of professional liability coverage for her work during the time she was employed by the law firms.

61. The statute of limitations for professional liability other than medical malpractice in New York is three (3) years. CPLR § 214(6). Accordingly, the Napoli Bern entities were obligated to purchase of a "tail" for later-made claims of professional liability.

62. Less than one year after Ms. Rubin's employment had been terminated by Defendant Napoli, the attorney professional liability coverage provided by the Napoli Bern entities[3] was permitted to lapse without the purchase of a "tail."

63. Napoli initially served a counterclaim against Ms. Rubin on March 30, 2016, which counterclaim was amended on or about April 5, 2016 and has subsequently been filed in various forms in a series of later-filed amended and freestanding pleadings.

64. Among other things, such counterclaim alleges claims of professional departures from accepted standards of practice in her work as an Attorney and General Counsel while employed by the law firms.

---

[3] Lawyers Professional Liability Policy Number LA-806928 issued to NBRS on a claims-made basis for the Policy Period from March 1, 2014 to March 1, 2015.

17

65. Among other things, such counterclaim alleges that such professional departures from standards of practice occurred in at least two client matters, each identified by name in the pleading.

66. Such allegations constituted claims of Professional Malpractice against Ms. Rubin by the Firms and Napoli.

67. Such allegations also invited claims of Professional Malpractice against the law firms and Ms. Rubin individually by the two named clients among others.

68. Ms. Rubin attempted to tender her defense of these allegations to the Firms' professional liability insurance carrier and was subsequently advised that the policy had lapsed on or about March 1, 2015, less than one year subsequent to the date of her termination on September 4, 2016, without the purchase of a "tail" to cover later-made claims of professional malpractice.

69. An additional Employment Practices policy provided defense coverage for the Napoli claims under a reservation of rights and a massive self-insured retention of two hundred fifty thousand dollars ($250,000.00) which Napoli and the carrier are attempting to force Ms. Rubin to pay out of pocket.  When Napoli learned of the coverage, he directed his defense attorneys to redraft the counterclaim language to remove the language that triggered such coverage, intending to deprive Ms. Rubin of her insurance and defense representation in the potential counterclaim and the stand-alone litigation.

70. Defendants breached the agreement by failing to maintain professional liability insurance (including the purchase of a "tail") covering Ms. Rubin for such claims related to the work she performed prior to the date of her termination by Napoli.

71. As a result of such breach of the employment agreement between herself and the

18

Firms, Plaintiff has suffered damages that are continuing to accrue.

## SIXTH CLAIM FOR RELIEF
### (Quantum Meruit, in the alternative, Against Napoli Bern Entities)

72. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

73. From October 14, 2014 until early December 2014, Plaintiff rendered services to Defendants in good faith. Defendants accepted the services and were benefitted by them.

74. Plaintiff and Defendants both understood and expected that Plaintiff would be compensated for her services.

75. It would be inequitable for Defendants to retain the benefit provided by Plaintiff without payment of compensation.

19

**WHEREFORE**, Plaintiff demands judgment:

A.    Awarding Plaintiff compensatory damages including but not limited to economic

damages and damages for emotional distress;

B.    Awarding Plaintiff punitive damages;

C.    Awarding reasonable attorneys' fees, costs and expenses;

D.    Granting such other legal and equitable relief as the Court may deem just and

equitable.

Dated:        New York, New York
              January 30, 2020

                            GISKAN SOLOTAROFF & ANDERSON LLP


                             s/
                            _____
                             Jason Solotaroff
                            90 Broad Street, 10th Floor
                            New York, New York 10004
                            212-847-8315

                            ATTORNEYS FOR PLAINTIFF