```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PAUL NAPOLI AND MARIE KAISER NAPOLI,    :
                                        :
                    Plaintiffs,         :
                                        :
            - against -                 :
                                        :
NATIONAL SURETY CORPORATION,            :
                                        :
                    Defendant.          :
----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/19/2022

21-CV-9279 (JSR) (RWL)

**REPORT AND RECOMMENDATION
TO HON. JED S. RAKOFF:
<u>MOTION TO DISMISS</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Paul Napoli is the name partner of multiple law firms.  Plaintiff Marie Kaiser Napoli is his wife.  In 2015, a former employee of one or more of Napoli's firms, Denise Rubin, sued Napoli's firms and Napoli personally for employment discrimination on the basis of sex, breach of employment contract, and retaliation ("the Rubin case").  The Napolis (together "Plaintiffs") filed a claim with their insurer, Defendant National Surety Corporation ("NSC"), to cover the cost of defending, and indemnifying the Napolis for, the Rubin case.  NSC declined on the basis that coverage for the Rubin case is excluded under the relevant insurance policy.  The Napolis brought this action for breach of contract and declaratory judgment that NSC has a duty to defend and indemnify the Napolis in the Rubin case.  NSC has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I recommend that NSC's motion be GRANTED.

## Background

The facts are based on the Amended Complaint (Dkt. 17), and documents incorporated by reference and relied on by Plaintiffs, such as the insurance policy at issue

and legal pleadings from the Rubin case.  As it must on a motion to dismiss, the Court accepts the well-plead allegations of the complaint as true, and draws all reasonable inferences in favor of Plaintiffs, who are the non-moving parties.

## A.    The Parties

The Napolis are residents of Puerto Rico.  (Amend. Compl. ¶ 2-3.)  NSC is incorporated and has its principal place of business in Illinois.  (*Id.* ¶ 4.)  It is authorized to issue insurance policies in New York State.  (*Id.* ¶ 5.)

## B.    The Insurance Policies

In 2014, NSC issued two insurance policies to the Napolis (the "Policies") – a homeowners policy (the "Homeowners Policy"), and an excess liability policy (the "Excess Policy").  (*Id.* ¶ 8.)  The Policies were renewed and provided coverage through May 15, 2016.  (*Id.* ¶ 9.)

The Policies provide that "[i]f a claim is made or suit is brought against an insured … for damages because of … personal injury … caused by an occurrence," NSC will pay for damages and defense costs.  (Amend. Compl. Ex. A at ECF p.52.)  Personal injury is defined to include a number of acts, including malicious prosecution and defamation, libel, and slander.  (Amend. Compl. ¶ 13 and Ex. A at ECF p.40 ¶ 16 (definition of "Personal Injury").)  As to liability, NSC "will pay on behalf of the insured for up to the limit of insurance … damages for which the insured is legally liable."  (Amend. Compl. Ex. A at ECF p.52.)  With respect to defense costs, the NSC will "pay all defense costs" NSC incurs in defending or settling a claim or suit for damages.  (Amend. Compl. Ex. A at ECF p.52.)

The Policies, however, also include several exclusions.   As relevant here, exclusions from the Homeowners Policy include:

- "damages resulting from … personal injury … arising out of: … business activities … of any insured" (the "Business Activities Exclusion") (Amend Compl. Ex. A at ECF p. 54 ¶ A(7));

- "damages resulting from … personal injury arising out of … discrimination due to … sex" (the "Discrimination Exclusion") (Amend Compl. Ex. A at ECF p. 54 ¶ A(3));

- "Personal injury sustained by a person as a result of an offense directly or indirectly related to the employment of that person by an insured" (the "Employment Exclusion") (Amend Compl. Ex. A at ECF p.56 ¶ C(5));

- "damages resulting from … personal injury … arising out of … any criminal, willful, malicious or other act or omission that is reasonably expected or intended by any insured to cause damage" (the "Intentional Acts Exclusion") (Amend. Compl. Ex. A at ECF p.54 ¶ A(1)).

Exclusions from the Excess Policy include the same categories:

- "damages arising out of or from … business activities … of any insured" (Amend. Compl. Ex. B at ECF p.97 ¶ 1(A)(2));

- "damages arising out of or from … discrimination due to … sex … by any insured" (Amend. Compl. Ex. B at ECF p.99 ¶ 2(G));

- "any liability arising out of any employment related or personnel practices, policies, acts or omissions [including but not limited to] … (b) coercion, criticism, failure to promote … defamation … humiliation, discrimination, libel, slander" (Amend. Compl. Ex. B at ECF p.99 ¶ 2(H));

- "damages arising out of or from … any criminal, willful, malicious or other act or omission that is reasonably expected or intended by any insured to cause damage" (Amend. Compl. Ex. B at ECF p.99 ¶ 2(K)).

C.     **The Rubin Case**

On April 24, 2015, Denise Rubin ("Rubin") filed an action in New York State court against Paul Napoli personally and multiple firms in which Paul Napoli was partner. (Amend Compl. ¶ 14 and Ex. C.)  Rubin filed an amended complaint on January 30, 2020. (*Id.* ¶ 15 and Ex. D.)

The first sentence of Rubin's complaint states that Rubin's lawsuit "is an employment discrimination, breach of contract and retaliation action" brought by Rubin as "an attorney formerly employed as the General Counsel and Appellate Counsel" by or for the benefit of multiple Napoli law firms.  (Amend Compl. Ex. D. at ¶ 1.)  According to Rubin's complaint, Paul Napoli and his firms discriminated against Rubin by, inter alia, paying her less than male attorneys, paying her bonuses lower than those received by male attorneys, failing to promote her to partner, and terminating her employment while retaining male attorneys with far lower performance.  (*Id.* at ¶ 4.)  Further, Paul Napoli and his firms breached Rubin's employment contract by, inter alia, failing to pay her a portion of her compensation and failing to maintain sufficient professional liability insurance.  (*Id.* at ¶¶ 4, 7.)

Following Rubin's filing of her original complaint, Rubin alleges, Paul Napoli "took or compelled others working at his behest to take a number of retaliatory actions against [her]."  This "campaign of retaliation," included, among other acts, denigrating Rubin to professional colleagues and the press; filing meritless, lewd, and professionally damaging counterclaims; filing a motion to disqualify her as counsel based on untrue statements about her mental stability; filing a meritless stand-alone litigation and a meritless disciplinary complaint; filing with his wife "and occasional counsel Marie Napoli,

defamatory motions in other litigations depicting Ms. Rubin as unethical and disloyal"; and filing with Marie Napoli "near-identical lawsuits … falsely alleging that Rubin represented them and their family in multiple unspecified matters and breached their confidences." (*Id.* at ¶¶ 8-9.)

Several paragraphs of Rubin's complaint contain allegations against only Marie Napoli.  (*Id.* at ¶¶ 35-38.)  Rubin's complaint, however, does not name Marie Rubin as a defendant; nor does it assert any claims for defamation, libel, slander, or malicious prosecution.  Rather, Rubin's complaint asserts six claims for:  employment discrimination against all defendants (First Claim), retaliation against Paul Napoli "on account of [Rubin's] opposition to sex discrimination" (Second Claim), breach of contract by the Napoli law firms for failing to pay her compensation due and to maintain professional liability insurance (Third, Fourth, and Fifth Claims), and quantum meruit for services rendered to the Napoli law firms without payment of any compensation (Sixth Claim).  (*Id.* ¶¶ 44-75.)

**D.    The Insurance Claim And Present Lawsuit**

The Napolis allege that the Rubin complaint "sets forth factual allegations of 'defamation' and 'abuse of process.'"  (Amend Compl. ¶ 25.)  More particularly, the Napolis allege that "there is the potential for Plaintiffs, the Napolis, to be found liable for allegedly making statements that Ms. Rubin claims are defamatory whether Ms. Rubin breached her professional duties as counsel to the Napolis in the course of her legal representation of the Napolis as the Napoli family counsel."  (*Id.* ¶ 29.)  These allegations, the Napolis claim, "trigger NSC's duty to defend" under the Policies.  (*Id*. ¶ 25.)  NSC, however, has denied its duty to defend and indemnify the Napolis in connection with the

allegations asserted in the Rubin case.  (*Id.* ¶ 27.)  The Amended Complaint asserts claims for declaratory judgment that NSC has the duty to defend and indemnify the Napolis in connection with the Rubin case and for breach of contract by disclaiming coverage under the Policies.  (*Id.* ¶¶ 34-54.)  In addition to declaratory judgment, Plaintiffs demand monetary damages and costs.  (*Id.* p. 9.)

**E.    NSC's Motion To Dismiss**

The Napolis commenced this action on November 9, 2021.  They filed their Amended Complaint on January 31, 2022.[1]  NSC filed its motion to dismiss on February 23, 2022, and the motion was fully briefed as of March 31, 2022.  The motion was referred to me for report and recommendation.  (Dkt. 26.)

NSC argues that it has no duty to defend or indemnify the Plaintiffs with respect to the Rubin case.  NSC's primary argument is that the Rubin case falls squarely within the Business Activities Exclusion because all of Rubin's claims arise out of her employment by Paul Napoli and his firms.  NSC also asserts that both the Discrimination Exclusion and Employment Exclusion bar coverage, and that Marie Napoli's claims should be dismissed for the additional reason that she is not named as a defendant in the Rubin case.

The Napolis oppose, contending that the Business Activities Exclusion does not encompass Rubin's allegations that the Napolis defamed her and filed actions against her in connection with Rubin's role as personal counsel for the Napolis and the Napoli family.  Those allegations arise out of Rubin's alleged personal representation of the

---

[1] The Amended Complaint dropped as a defendant another insurer that had been named in the initial complaint.

Napolis and not out of Paul Napoli's business activities.  And, because coverage extends to at least those allegations, NSC is obligated to defend the entirety of the action.  The Napolis' briefing does not address either the Discrimination Exclusion or Employment Exclusion.

NSC's response to the Napolis' argument is that most of Rubin's allegations of personal representation are made solely with respect to Marie Napoli, who is not a party to the Rubin case.  Regardless, NSC argues, Rubin's allegations that the Napolis defamed and maliciously filed baseless actions against her in connection with Rubin's alleged personal representation of the Napolis arise out of Paul Napoli's business activities in that the defamatory and malicious actions were part and parcel of Paul Napoli and his firms' employment-related retaliation against Rubin.

## Applicable Legal Standards

### A.      Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127. S.Ct. at 1966).

In considering a motion to dismiss for failure to state a claim, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences

in the [non-moving party's] favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).   This tenet, however, is "inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, … i.e., enough to make the claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).   A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 129 S.Ct. at 1949.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint.  *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Limited Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).  For insurance disputes in particular, courts may consider the insurance policies themselves, even if they are not

attached to the plaintiff's complaint. *Paraco Gas Corp. v. Travelers Casualty and Surety Co. of America*, 51 F. Supp.3d 379, 388 n.3 (S.D.N.Y. 2014); *Svensson v. Securian Life Insurance Co.*, 706 F. Supp.2d 521, 525 (S.D.N.Y. 2010).

**B.    New York Insurance Contract Law**[2]

Under New York law, "a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Group Inc. v. New England Insurance Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (collecting cases).  "The initial interpretation of a contract is a matter of law for the court to decide." *Id.* at 275 (internal quotation marks and brackets omitted).  Courts should interpret a contract "to give effect to the intent of the parties as expressed in the clear language of the contract." *Id.* (internal quotation marks omitted).  Unambiguous provisions are given "their plain and ordinary meaning." *Vigilant Insurance Co. v. Bear Stearns Companies, Inc.*, 10 N.Y.3d 170, 177, 855 N.Y.S.2d 45, 48 (2008); *see also Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Insurance Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (if provisions "are unambiguous and understandable, courts are to enforce them as written").  An insurance contract is unambiguous when "there is no reasonable basis for a difference of opinion." *White v. Continental Casualty Co.*, 9 N.Y.3d 264, 267, 848 N.Y.S.2d 603, 605 (2007).

Conversely, when an insurance policy "may be reasonably interpreted in two conflicting manners, its terms are ambiguous and any ambiguity must be construed in favor of the insured and against the insurer." *Lend Lease (US) Construction LMB Inc. v. Zurich American Insurance Co.*, 28 N.Y.3d 675, 682 49 N.Y.S.3d 65, 69 (2017) (internal

---

[2] The parties both invoke New York law.

citations and quotation marks omitted); *accord Dean v. Tower Insurance Co. of New York*, 19 N.Y.3d 704, 708, 955 N.Y.S.2d 817, 818 (2012).  At the same time, a court must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation."  *Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.*, 31 N.Y.3d 51, 63, 73 N.Y.S.3d 113, 120 (2018) (internal quotation marks omitted).

"The rule that insurance policies are to be construed in favor of the insured is most rigorously applied in construing the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability."  *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d Cir. 1987).  "Whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language."  *Pioneer Tower Owners Association v. State Farm Fire & Casualty Co.*, 12 N.Y.3d 302, 307, 880 N.Y.S.2d 885, 887 (2009) (internal quotation marks and citation omitted).  Policy exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction."  *Id*.  To avoid coverage on the basis of a policy exclusion, an insurer thus bears the burden of establishing that the exclusion is "subject to no other reasonable interpretation."  *Id*.

## C.    The Duty To Defend vs. The Duty To Indemnify

An insurer's duty to defend a lawsuit is "broader than [the insurer's] duty to indemnify" the insured for loss on the merits.  *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.*, 302 F.3d 83, 97 (2d Cir. 2002).  Indeed, under New York law, "[a]n insurer's duty to defend its insured is exceedingly broad."  *Regal Construction Corp. v. National Union Fire Insurance Co.*, 15 N.Y.3d 34, 37, 904 N.Y.S.2d 338, 340 (2010) (internal quotation marks omitted).  "While the duty to indemnify is generally adjudicated

at the end of the proceeding, an 'insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage.'" *Western Waterproofing Co., Inc. v. Zurich American Insurance Co.*, No. 20-CV-3199, 2022 WL 329225, at *7 (S.D.N.Y. Feb. 3, 2022) (quoting *Regal*, 15 N.Y.3d at 37, 904 N.Y.S.2d at 340). "That is, the duty to defend 'arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" *Id.* (citing *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.*, 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 984 (1997)).

Whether the allegations of the underlying suit are meritorious or not, "[i]f, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Century 21, Inc. v. Diamond State Insurance Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (internal quotation marks omitted). And, just as ambiguity in insurance policy language is to be construed in favor of the insured, "ambiguity must be resolved in favor of the insured" where "the [underlying] complaint is ambiguous as to a fact material to coverage." *Western Waterproofing*, 2022 WL 329225 at *7 (citing *International Business Machines Corp. v. Liberty Mutual Insurance Co.*, 363 F.3d 137, 144 (2d Cir. 2004)).

"Though broad, the duty of defense is not boundless." *Ohio Security Insurance Co. v. Travelers Indemnity Company of Connecticut,* No. 19-CV-1355, 2021 WL 797670, at *4 (S.D.N.Y. Mar. 1, 2021). "[A]n insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." *Town of Massena v. Healthcare Underwriters Mutual Insurance Co.*, 98 N.Y.2d 435, 445, 749

N.Y.S.2d 456, 460 (2002) (quotation marks omitted).  At the same time, "a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Jovani Fashion, Ltd. v. Federal Insurance Co.*, 416 F. Supp.3d 334, 344 (S.D.N.Y. 2019) (quoting *Northville Industries Corp. v. National Union Fire Insurance Co.,* 89 N.Y.2d 621, 634-35, 657 N.Y.S.2d 564, 569 (1997)); *see also Stamford Wallpaper Co. v. TIG Insurance*, 138 F.3d 75, 81 (2d Cir. 1998) ("we will not hypothesize or imagine episodes or events that cannot be found among the allegations, and cannot reasonably be deduced from them").

## Discussion

The parties do not dispute that absent application of an exclusion, Rubin's lawsuit against Paul Napoli would be covered by the Policies.  The principal question then is whether "the allegations within the four corners of the [Rubin] complaint potentially give rise to a covered claim," that is not excluded by "clear and unmistakable language" in one or more of the exclusions invoked by NSC.  *Frontier*, 91 N.Y.2d at 175, 667 N.Y.S.2d at 984 (first quotation); *Pioneer Tower*, 12 N.Y.3d at 307, 880 N.Y.S.2d at 887 (second quotation).  Before discussing that issue, however, the Court first addresses NSC's secondary argument that any duty to defend or indemnify Marie Napoli is absent because the Rubin complaint does not name her as a defendant.

## A.    Marie Napoli

As set forth above, the Rubin complaint asserts several allegations against Marie Napoli, accusing her of making false statements about Rubin, revealing confidences, and filing frivolous litigation against her.  (*See* Amend Compl. Ex. D ¶¶ 35-38.)  The Rubin

complaint does not, however, name Marie Napoli as a defendant and seeks no relief as against her.  As a result, NSC argues, there is no lawsuit against Marie Napoli to defend or indemnify and thus no coverage obligation exists.

In support, NSC cites cases stating that the duty to defend is triggered upon filing of a lawsuit, in comparison to the duty to indemnify, which is triggered upon a finding of liability.  *See* Def. Mem. at 3[3] *(citing Metro Property and Casualty Insurance Co. v. Sarris*, No. 15-CV-780, 2017 WL 3252812, at *14 (N.D.N.Y. July 28, 2017), and *Atlantic Casualty Insurance Co. v. Value Waterproofing, Inc.*, 918 F. Supp.2d 243, 261 (S.D.N.Y. 2013)); *see also Stein v. Northern Assurance Company of America*, No. 09-CV-1029, 2011 WL 13305251, at *15 (E.D.N.Y. Jan. 25, 2021) ("defendants had no duty to defend [plaintiffs] given that there was no 'suit' against them"); *FSP, Inc. v. Societe Generale*, No. 02-CV-4786, 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003) ("The subject action is not justiciable to the extent it seeks a declaration regarding defendant's obligation to defend and indemnify plaintiff with regard to potential, unfiled claims.").

Plaintiffs did not address that argument in their opposition, and, on that basis alone, may be deemed to have conceded the point.[4]  *See Canas v. Whitaker*, No. 6:19-CV-06031, 2019 WL 2287789, at *6 (W.D.N.Y. May 29, 2019) ("It is well settled in this Circuit that a plaintiff effectively concedes a defendant's arguments by his failure to

---

[3] "Def. Mem." refers to Defendant's Memorandum Of Law In Support Of National Surety Corporation's Motion To Dismiss Complaint at Dkt. 24-1.

[4] The Court notes, however, that in certain contexts not applicable here, courts do extend the duty to defend to cases where the insured is not named in the underlying action as a party defendant.  *See, e.g.*, *Zurich American Insurance Co. v. XL Insurance America, Inc.*, 547 F. Supp.3d 381, 399 (S.D.N.Y. 2021) (insurer had duty to defend subcontractor as additional insured that was not named in complaint); *Charter Oak Fire Insurance Co. v. Zurich American Insurance Co.*, 462 F. Supp. 3d 317, 324 (S.D.N.Y. 2020) (same).

respond to them") (internal quotation marks and citation omitted); *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A Plaintiff effectively concedes a defendant's arguments by his failure to respond to them"); *Rosenblatt v. City of New York*, No. 05-CV-5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) ("Plaintiff effectively concedes defendants' other arguments ... by her failure to respond to them"); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09-CV-4472, 2010 WL 1222044, at *8 (S.D.N.Y. Mar. 29, 2010) ("failure to adequately brief an argument constitutes waiver of that argument at [the] motion to dismiss stage") (quotation marks and citation omitted).

At oral argument, in response to the Court's questioning, Plaintiffs' counsel pointed to the language of the Homeowners Policy, which requires NSC to defend if a "claim is made or suit is brought" against an insured.  (*See* Amend. Compl. Ex. A at ECF p.52.) Plaintiffs correctly observe that claim and suit are not necessarily synonymous.  *See Williams v. MESA Underwriters Specialty Insurance Co.*, 538 F. Supp.3d 234, 243 (D. Conn. 2021) (suggesting that "all suits are claims, but not all claims are suits"). Nonetheless, Rubin has neither brought a suit nor made a claim against Marie Napoli. Rather, she has asserted allegations about Marie Napoli's conduct as part of the retaliatory campaign waged by the parties in suit against whom she seeks relief, Paul Napoli and his firms, not Marie Napoli.

"Courts have found that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed."  *Home Insurance Company of Illinois (New Hampshire) v. Spectrum Information Technologies, Inc.*, 930 F. Supp. 825, 846 (E.D.N.Y. 1996); *see also Andy Warhol Foundation for Visual Arts, Inc. v. Federal Insurance Co.*,

189 F.3d 208, 215 (2d Cir.1999) (defining "claim" under New York law, where "the policy contains no definition of the term," as "an assertion by a third party that in the opinion of that party the insured may be liable to it for damages [that are] within the risks covered by the policy") (citation and internal quotation marks omitted); *Windham Solid Waste Management District v. National Casualty Co.*, 146 F.3d 131, 134 (2d Cir. 1998) ("an accusation that wrongdoing occurred is not by itself a claim; nor is a naked threat of a future lawsuit; or a request for information or an explanation.  A claim requires, in short, a specific demand for relief") (internal citations omitted).  The Rubin complaint makes no demand for damages or any other relief as to Marie Napoli.  Accordingly, it makes no claim against Marie Napoli sufficient to trigger coverage.

NSC's motion to dismiss thus should be granted with respect to Plaintiff Marie Napoli.  In the event that Rubin were to bring a claim against Marie Napoli in the future, however, the issue of coverage would have to be visited anew.  As a practical matter, the coverage question thus focuses on the exclusions invoked by NSC to which the Court now turns.

## B.    Exclusion From Coverage

The parties focus most of their attention on whether the Business Activities Exclusion bars coverage, even for the duty to defend.  NSC argues that all of the Rubin claims stem from her employment by the Napoli firms and thus arise from Paul Napoli's business activities.  In opposition, the Napolis argue that some of the Rubin complaint's allegations are grounded in Rubin's purported personal representation of the Napoli's and therefore require NSC to defend the Rubin case in its entirety.  The Court does not agree.

The entirety of Rubin's complaint is focused on allegations arising out of Paul Napoli's business activities.  Indeed, the very first sentence of the Rubin complaint states that "[t]his is an employment discrimination, breach of contract and retaliation action by … an attorney formerly employed" by the Napoli law firms.  (Amend. Compl. Ex. D ¶ 1.) Of the six claims for relief asserted by Rubin, four are asserted against only the Napoli law firms, namely Rubin's claims for breach of contract and quantum meruit.  One claim is asserted against all defendants, including Paul Napoli, and alleges employment discrimination on the basis of sex.  Similarly, the one claim asserted against only Paul Napoli is for unlawful retaliation "against [Rubin] in the terms, conditions and privileges of employment on account of her opposition to sex discrimination."  (Amend. Compl. Ex. D at 15 (Second Claim For Relief).)  In other words, the only two claims alleged against Paul Napoli both are grounded in "the terms, conditions and privileges of employment." Recognizing as much, Plaintiffs concede that "the causes of action pleaded in Rubin's [complaint] are for breach of employment contract and retaliation related to Ms. Rubin's employment with Napoli's firm."  (Pl. Opp. at 12.[5])  It is beyond dispute that those aspects of the Rubin complaint arise out of Paul Napoli's business activities and fall squarely within the "clear and unmistakable language" of the Business Records Exclusion.  *Pioneer Tower*, 12 N.Y.3d at 307, 880 N.Y.S.2d at 887.  Nor is it disputed that coverage for Rubin's claims of sex discrimination is excluded by the Discrimination Exclusion.

Plaintiffs nevertheless point to Rubin's allegations of frivolous lawsuits and defamatory statements and argue that they potentially give rise to a covered claim.  (Pl.

---

[5] "Pl. Opp." refers to Revised Plaintiffs' Memorandum Of Law In Opposition To Defendant's Motion To Dismiss at Dkt. 33.

Opp. at 12-14.)  At least three paragraphs raise such allegations against Paul Napoli.[6] One alleges that Paul Napoli filed a "frivolous, rambling and nonsensical" counterclaim against Rubin "designed to embarrass and defame Ms. Rubin" and in which "Napoli went out of his way to disparage Ms. Rubin."  (Amend. Compl. Ex. D ¶ 28.)  Another paragraph alleges that Paul Napoli filed an action making false allegations that Rubin served as personal counsel to the Napoli family and "as Defendant Napoli's personal counsel in numerous matters."  (Amend. Compl. Ex. D ¶ 39.)  And another alleges that in the same action, Paul Napoli falsely alleged that Rubin "impermissibly disclosed Defendant Napoli's confidences in violation of Ms. Rubin's ethical obligations as his counsel."  (Amend. Compl. Ex. D ¶ 40.)

The Rubin complaint, however, makes those allegations solely in the context of describing the particulars of Napoli's retaliatory conduct.  At the outset of providing those incidents, the Rubin complaint alleges that "Napoli had not made any such claims against Ms. Rubin until after she filed the discrimination claims against Napoli."  (Amend. Compl. Ex. D ¶ 28.)  The Rubin complaint then frames the end of its description of the Napolis' various frivolous lawsuits and defamatory statements by identifying other retaliatory actions "[i]n addition to the retaliatory filing of multiple frivolous actions."  (Amend. Compl. Ex. D ¶ 41.)  Further reinforcing the exclusively employment-related nature of Rubin's allegations, the Rubin complaint does not assert claims for either malicious prosecution or defamation.  *Cf. Brooklyn Law School v. Aetna Casualty & Surety Co.*, 661 F. Supp.

---

[6] As noted earlier, several other allegations in Rubin's complaint concern actions filed, and statements made in those actions, by Marie Napoli, who is not named as a defendant in the Rubin case.

445, 453 (E.D.N.Y. 1987) (coverage triggered for a complaint expressly seeking damages for defamation, but not for another complaint seeking damages for humiliation and wrongful discharge; "fragments" of complaint alleging acts performed to humiliate and damage reputation did not state libel or slander as "theory of liability" against the defendant in suit).[7]

Plaintiffs only response is purely and unrealistically speculative.  They argue that "Rubin's allegations of defamation are not dependent on being able to establish the elements of a retaliation claim.  It is within the world of possible results that Rubin fails on her claims for retaliation, but that the Napolis remain exposed to Rubin's allegations that they allegedly defamed Rubin by asserting that she violated ethical duties as their personal counsel and committed an abuse of process in connection with those allegations."  (Pl. Opp. at 14.)  According to Plaintiffs, that possibility creates a factual ambiguity that must be resolved in favor of the insured.  (Pl. Opp. at 14-15.)

But there is no ambiguity for the reasons explained above.  The allegations of frivolous actions making false statements about Rubin are bookended by assertions placing those allegations squarely in the context of Rubin's claim for retaliation to her claims of sex-based discrimination.  Similarly, the claims for relief asserted by Rubin are

---

[7] *Brooklyn Law* can be distinguished in that the court noted that the underlying complaint that did not trigger coverage for defamation did not even allege that anyone made false statements about the plaintiff in that case.  In the instant case, Rubin's complaint did allege false statements, but nonetheless did not allege defamation as a theory of liability.  The *Brooklyn Law* court observed, however, that had the plaintiff in that case sought to assert a claim for defamation, he knew how to do so given the other complaint he filed that did contain a claim for defamation.  661 F. Supp. at 453.  Similarly, in the instant proceeding, Rubin was an experienced lawyer who no doubt knew how to assert a defamation claim distinct from her retaliation claim had she wanted to do so.  As explained below, there are good reasons why Rubin would not and could not have done so.

expressly based in her employment relationship with Napoli and his firms.  And the Rubin complaint does not assert claims for defamation or malicious prosecution, even though Rubin amended her complaint in 2020 specifically to assert her claim for retaliation based on post-termination conduct.

Moreover, even if she had wanted to, Rubin likely would have been foreclosed from asserting any claim of defamation or malicious prosecution due to the statute of limitations.  The filing of frivolous actions and false statements of which Rubin accuses the Napolis occurred in 2016-2017.  (See Amend. Compl. Ex. D ¶¶ 28-40.)  Yet Rubin did not file her amended complaint until January 30, 2020, well after the one-year statute of limitations expired.  *See* N.Y. C.P.L.R. § 215(3).  And, even if Rubin had been able to assert such a claim, it likely would be excluded from coverage under the Policies' Intentional Acts Exclusion, which excludes any "willful, malicious or other act or omission that is reasonably expected or intended by any insured to cause damage."  (Amend. Compl. Ex. A at ECF p.54 ¶ A(1); Ex. B at ECF p.99 ¶ 2(K).)  *See Shapiro v. Glen Falls Insurance Co.*, 39 N.Y.2d 204, 206-07, 383 N.Y.S.263, 264 (1976) (finding no duty to defend claim for false and defamatory conduct – despite definition of personal injury to include libel, slander, and defamation – because of intentional acts exclusion); *Hodgson v. United States Automobile Association*, 262 A.D.359, 360, 691 N.Y.S.2d 137, 138 (2d Dep't 1999) (same).

In short, the Rubin complaint does not suggest a "reasonable possibility of coverage."  *Regal*, 15 N.Y.3d at 37, 904 N.Y.S.2d at 340.  Instead, Plaintiffs ask the Court to do exactly what it may not and "impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured

and unreasonable." *Jovani Fashion*, 416 F. Supp.3d at 344.  Rubin's claims against Paul Napoli are excluded under the Business Activities Exclusion.  Accordingly, NSC does not have a duty to defend, and its motion to dismiss should be granted.[8]

## C.   Employment Exclusion

As an additional argument, NSC asserts that even if not excluded from coverage by the Business Activities Exclusion, any allegation by Rubin that the Napolis defamed her and filed malicious claims against her would be excluded by the Employment Exclusion.  The premise to that argument is that the Napolis' alleged engagement of Rubin as their personal attorney is an employment relationship within the meaning of the Employment Exclusion.  NSC did not develop that argument in its briefing, and at oral argument neither party could cite to relevant authority.  Particularly given that the motion

---

[8] Plaintiffs and the defense each highlight one case as support for their position. As reflected in the parties' efforts to distinguish the particular case cited by the other, neither case is wholly apt.  *Compare MacDonell v. OneBeacon American Insurance Co.*, No. 12-CV-6258, 2013 WL 6181867 (W.D.N.Y. Nov. 25, 2013) (cited by NSC) (defamatory statements made by forensic business consultant about another forensic business consultant were excluded from coverage by exclusions for intentional conduct and for conduct arising out of a business pursuit as the statements "were, at least, incidental to [plaintiff's] forensic consulting business") (distinguished, Pl. Opp. at 15-16) with *Lamb v. Security Mutual Insurance Co.*, 278 A.D.2d 855, 719 N.Y.S.2d 409 (4th Dep't 2000) (cited by Plaintiffs) (although babysitter was engaged in business activity, strict liability and negligence claims against babysitter arising from child's being bitten by babysitter family's dog while in babysitter's care were not excluded by business activities exclusion because of exception for activities that "are ordinarily non-business in nature") (distinguished, Def. Reply at 8-9).

can be resolved on the basis of the Business Activities Exclusion, the Court does not address NSC's additional argument under the Employment Exclusion.

### D.      Dismissal With Prejudice

The Napolis already amended their complaint once.  Their opposition did not ask for leave to amend as an alternative form of relief, although counsel did so at oral argument.  In any event, amendment would be futile in light of the foregoing analysis. Accordingly, the Court recommends dismissing this case with prejudice.  *See 10012 Holdings, Inc. v. Sentinel Insurance Co., Ltd.*, 507 F. Supp.3d 482, 489 (S.D.N.Y. 2020) ("Leave to amend is denied because the Policy does not provide coverage for the loss Plaintiff suffered").

### Conclusion

For all of the reasons explained above, the Court recommends that NSC's motion to dismiss be GRANTED and the case dismissed with prejudice.  To the extent not expressly discussed above, the Court has considered Plaintiffs' arguments and has determined them to be without merit.

### Procedures For Filing Objections And Preserving Appeal

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York

10007.  **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       May 19, 2022

Copies transmitted this date to all counsel of record.